1   Robert Evans Mahler, Pro Se          19 NOV '20 12:42 RECVD USDC-ORP
2   P.O. Box 7658
    Salem, Oregon 97303
3   (503)589-4878

4

5

6

7
                    IN THE UNITED STATES DISTRICT COURT
8
                       FOR THE DISTRICT OF OREGON
9

10  Robert Evans Mahler,          )   Civil Action No. 6:'20-CV-2016-AA
                                   )
11       Plaintiff,                )
                                   )
12       v.                        )   Complaint in Tort (Federal Tort
                                   )
13  McKenzie-Willamette Medical    )     Claims Act 28 U.S.C. 2671);
                                   )
14  Center; Oregon Medical Group;  )     Civil Rights;  Negligence;
                                   )
15  DOES 1 -20,                    )    Gross Negligence; Intentional
                                   )
16       Defendants                )       Inflication of Emotional
                                   )
17                                 )   Distress;  Violation(s) of the
                                   )
18                                 )        ADA Americans with
                                   )
19                                 )          Disabilities Act
                                   )
20  ───────────────────────────── )      Jury Trial Requested
21

22       Robert Mahler brings this lawsuit against Defendants
23  McKenzie-Willamette Medical Center (MWMC), Oregon Medical Group
24  (OMG), and Does 1-20. In support of these allegations, plaintiff
25  states:
26  1.    The plaintiff is a resident of the County of Marion, State
27  of Oregon.  The matter in controversy exceeds fifty thousand
28  dollars ($50,000), exclusive of interest, and costs.  That the
29

amount sought in this suit exceeds the jurisdiction limit of the Oregon District Court. The venue that is a most appropriate is Portland, Oregon as defendants MWMC, OMG, and DOES 1-20, maintain their principal place of business and, or employment in Springfield and Eugene, Oregon.

2.    Defendant, (MWMC), is an Oregon Corporation providing medical services to the citizens of Springfield and has its principal place of business located in Springfield, Oregon.

3.    OMG is an Oregon Corporation providing medical services to the citizens of Eugene and has its principal place of business located in Eugene, Oregon.

4.    Defendants, DOES 1-20, are physicians, nurses, medical technicians, doctor assistants, and, or staff members, at all times herein relevant, past or present employees of MWMC and, or OMG.   They are being sued here, both as individuals, and in any official capacity.   "DOES" is a fictitious name used to designate parties not presently known to plaintiff.

4.    The term "defendants" is used in this Complaint to refer to all defendants, MWMC, OMG, and DOES 1-20 collectively and individually, unless otherwise specified.

5.    Medical malpractice, medical, and other errors occurred on and, or before, February 19, 2019, and after that, in the State of Oregon.

6.    The defendants, and DOES 1-20, at all times herein relevant, were employees of the defendants, MWMC, OMG.   "DOES" is a fictitious name used to designate parties not presently known to plaintiff.

7.    Plaintiff suffers disabilities from advanced osteo-
arthritis, left-sided hemiplegia as the result of a C-3 cervical
fracture, vasovagal syncope, and left and right knee implant
prosthetics.  As a result of plaintiff's disabilities, he has
used a service dog for 15 years.

8.    All defendants are medical providers providing medical
services in Oregon at the time of the medical malpractice.  All
employees/agents/associates/DOES 1-20, of Defendants MWMC and
OMG, were acting within the scope of that
employment/agency/associate relationship, when they failed to
follow the applicable standard of medical care during their
treatment of the plaintiff on or about February 19, 2019.  MWMC,
Springfield, OR and OMG, Eugene. OR, were in charge at the times
plaintiff was injured.

9.    Prior to February 19, 2019, plaintiff was examined by
doctors, medical assistants, and other staff, at OMG and MWMC.
It was determined by OMG, MWMC, and DOES 1-20 defendants, that
plaintiff is a candidate for shoulder replacement surgery.

10.    On, or about, February 19, 2019, plaintiff was admitted to
MWMC for shoulder replacement surgery.

11.    On, and before, February 19, 2019, plaintiff requested that
defendants place him under anesthesia immediately after being
dressed for surgery to prevent a vasovagal response.  All
defendants agreed with plaintiff's request.

12.    Plaintiff is protected by the ADA as he is a person with a
"disability" as that term is defined by the statute; 42 U.S.C. §
12102(2)(a).  Plaintiff has a "physical or mental impairment

COMPLAINT                          3

that substantially limits one or more of [his] major life
activities." Plaintiff owns and uses a service dog defined in
5 U.S.C. 301; 28 U.S.C. 509, 510, 42 U.S.C. 12186(b), and both
are protected by the ADA.

**ALLEGATIONS**

13.  On, or about, 2/19/19, as a direct result of the defendants
breaching the applicable standard of medical care owed to the
plaintiff by failing to inform the plaintiff of the change in
surgery schedule, plaintiff experienced undue and excessive
anxiety, fear, uncertainty and, and a result of not being
noticed of the the change in schedule, was physically and
psychologically injured due to the onset of a vasovagal response.

14.  On, or about, 2/19/19, Defendant DOE 1, and DOE 3, licensed
physician anesthesiologists, were required and affirmed that
they would provide the proper medical care, treatment, and
advice to plaintiff, and at all times that they provided medical
care, treatment, and advice to the plaintiff, they was under the
supervision of defendant DOE 2, a licensed physician surgeon.
As a result of not being anesthetized upon arrival into pre-op
at MWMC, plaintiff was physically and psychologically injured
due to the onset of a vasovagal response.

15.  On, or about, 2/19/19, defendants DOES 1, 2, and 3, all
medical doctors, under the applicable standard of medical care,
owed a duty to the plaintiff to supervise the medical care that
DOES 4-20, physician's assistants, nurses, and phlebotomists,
were providing to the plaintiff.  The defendant medical doctors,
and all assistant medical staff, breached this duty and standard
of care by failing to adequately supervise, which resulted in

the failure to inform the plaintiff of the change in surgery schedule, switch in anesthesiologists, and inability to locate the whereabouts of the attending surgeon. All of these failures amount to a breach of the applicable standard of medical care.

16.  That as a direct and proximate result of the breach of the applicable standard of medical care by all defendants, the plaintiff has suffered the following harms: 1) suffered conscious pain and suffering both in the past and, it is expected by his physicians, the future, 2) incurred medical expenses in the past and will incur future medical expenses, 3) suffered mental and emotional anguish, 4) continues suffering from permanent physical injuries and increased disabling pain, and 5) has sustained other damages.

17.  All of the injuries and damages sustained by plaintiff were the direct and proximate result of the negligent actions and breaches of the applicable standards of medical care by all defendants without any act or omission on the part of the plaintiff directly thereunto contributing.

## CAUSES OF ACTION

18.  Plaintiff is entitled to recover damages from defendants jointly and each of them based on the theories of liability hereinafter enumerated in Counts I through 5, and under such other theories of liability as may be appropriate based upon the facts as alleged herein or as revealed during discovery.

## Count 1

## Negligence - Medical Malpractice

19.  Plaintiff re-alleges and incorporates by reference paragraphs 1-18 pursuant to this cause of action.

20.   Defendants had a duty to plaintiff to provide him with applicable standards of medical care medical care.

21.   Defendants breached their duty to plaintiff by failing to inform the plaintiff of the the change in surgery schedule, switch in anesthesiologists, and inability to locate the whereabouts of the attending surgeon.

22.   By reason of defendant's failures, plaintiff suffers daily increased pain and discomfort, further exacerbation of his disabilities, and decreased capabilities.  Gradually, over a period of time by reason of defendant's negligence, plaintiff was caused to be injured as follows, to-wit:  he experienced increased levels of pain and discomfort; he is experiencing decreased mobility and sensory loss; his pre-existing osteo-arthritis was greatly aggravated; his body was made sore; he is suffering increased pain and mental anguish; he was caused to lose sleep and weight; and he later incurred expenses for medical attention.

23.   Plaintiff avers that defendants' breach of duty and negligence was a proximate cause of injury and damage to plaintiff that resulted from failures by defendants to provide agreed upon medical attention and care.

### Count 2

### Gross Negligence - Medical Malpractice

24.   Plaintiff re-alleges and incorporates by reference paragraphs 1-23 pursuant to this cause of action.

25.   Plaintiff avers that defendants breached their duty to him by wantonly injuring and damaging plaintiff by not providing applicable standards of medical care.  For example:

a. Defendants moved the surgery time without notice to plaintiff.

b. Defendants switched plaintiff's anesthesiologist without notice to plaintiff.

c. Defendant's attending anesthesiologist was not advised, and did not know, how to proceed with plaintiff's surgery preparations.

d. Defendants refused to allow plaintiff's service dog to accompany plaintiff to pre-op. Supervising "charge nurse" claimed "sterile" environment (which obviously wasn't). The actions and behavior of the pre-op medical personnel seemed to be intentionally aggravating plaintiff to induce his vasovagal response as a clinical experiment.

e. Attending anesthesiologist had no knowledge of patient "vaso vagal" response issues despite patient discussions with initial interviewing anesthesiologist previous discussions with surgeon and his surgeon's nurse.

f. Attending anesthesiologist suggested that the patient be "calmed / sedated" via "sedation" until surgery and then would talk to surgeon before surgery. This would not entail making the patient unconscious to protect against vaso vagal response despite previous discussions with initial interviewing anesthesiologist, surgeon, and surgeon's nurse to this effect and medical necessity to this effect.

g. Attending anesthesiologist asked nurses what surgeon wants done to patient. Older nurse referred to clipboard, flipped through stack of paper pages, answered "there is nothing in here" (nothing in patient's medical records).

COMPLAINT                                    7

h.   Interviewing anesthesiologist had previously informed patient that neck nerve block procedure, if performed improperly, could cause quadriplegia.   Patient asked surgeon's nurse to make sure the McKenzie Willamette Hospital and attending anesthesiologist were aware that patient did not want, under any circumstances, the neck nerve block procedure performed prior to surgery.

i. Attending anesthesiologist stated that he was unaware of a risk of quadriplegia with the neck nerve block procedure previously stated to patient by interviewing anesthesiologist. Attending anesthesiologist additionally stated that there was risk of permanent nerve impairment in arm (numbness) that could be caused by nerve block procedure that the interviewing anesthesiologist did not mention or discuss with patient. Subsequent nurse / assistant placed heater (hot air blow) apparatus under plaintiff's blankets, causing uncomfortable overheating until removed by the plaintiff.

j. Nursing assistant placed blankets on plaintiff, asked if plaintiff wants heat, plaintiff answered "No!"

k. Plaintiff asked "When will surgeon visit"?  First answer by nurse / assistant, "Surgeon is not here yet".   Second answer by different nurse / assistant "Surgeon is still in surgery."

26.  As a result of the gross carelessness and wanton negligence of defendants, plaintiff sustained severe increased injuries to his body, consisting of, but not limited to: increased aggravation to pre-existing osteo-arthritis of both shoulders hips and back; plaintiff suffered great pain of body and mental anguish, evidenced by the need for continued corrective surgery;

large sums have been, and will be, expended for his medical care
and treatment; all to his, the said plaintiff's loss and damage.
27.   Plaintiff avers that defendants' breach of duty, wanton
conduct, and gross negligence was the proximate cause of injury
and damage to him as set forth above.

### Count 3

### Violations of the Americans with Disabilities Act

28.   Plaintiff re-alleges and incorporates by reference
paragraphs 1-27 pursuant to this cause of action.
29.   Defendants have violated Title II and Title III of the
Americans with Disabilities Act which prohibits discrimination
in testing and which prohibits denial of services, benefits, and
programs to people with disabilities by public entities.
30.   As a direct and proximate result of the defendants'
wrongful acts, omissions, and misconduct, plaintiff has been
injured and demands judgment against the defendants jointly,
severally and/or in the alternative on this cause of action
other damages in an amount in excess of the jurisdictional
limits of this Court and to be determined at the trial herein,
together with interest, exemplary or punitive damages,
attorney's fees and costs of this action.

### COUNT 4

### ADA VIOLATION - FAILURE TO ACCOMODATE

31.   Plaintiff re-alleges and incorporates by reference
paragraphs 1-30 pursuant to this cause of action.
32.   Plaintiff has specific medical limitations imposed on him,
as such; plaintiff is a disabled individual within the

definitions of the laws in the State of Oregon and the Americans with Disabilities Act (ADA).

33.  Defendants and each of them were aware of Plaintiff's medical conditions, restrictions, and disabilities.

34.  Defendants did not attempt to accommodate plaintiff or engage in any interactive process to explore his limitations and possible accommodations.

35.  Defendants did not engage in any interactive process to attempt to accommodate plaintiff during his visit to the MWMC.

36.  As a proximate result of defendant's discrimination against plaintiff, plaintiff has suffered and continues to suffer embarrassment, humiliation and mental anguish all to his damage in an amount according to proof.

37.  As a result of defendants' discriminatory acts as alleged herein, plaintiff is entitled to reasonable attorneys' fees and costs of said suit as provided by the Americans with Disabilities Act section 12205.

38.  The Defendants committed the acts alleged herein maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to despicable conduct and in conscious disregard of Plaintiff's rights.  Thus, Plaintiff is entitled to recover punitive damages from Defendants in an amount according to $500,000.00.

### COUNT 5

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

39.  Plaintiff re-alleges and incorporates by reference paragraphs 1-38 pursuant to this cause of action.

40.   Defendants MWMC, PTTC, and DOES 1-20, acted in an extreme
and outrageous manner by forcing and making it necessary for
plaintiff to leave the MWMC.  This was done to force plaintiff
to leave because plaintiff was accompanied by his service dog
and plaintiff suffers from vasovagal.

41.   Defendants actions were done to cause plaintiff harm, with
reckless disregard for plaintiff's physical condition, and the
probability of causing emotional distress.

42.   Defendants actions did cause plaintiff to suffer increased
severe psychological pain and suffering.

43. Defendants actions caused Plaintiff to suffer depression, low
self-esteem, anxiety, stress, mental, and emotional anguish.

44.   As a proximate result of the defendant's actions, plaintiff
has suffered and continues to suffer embarrassment, humiliation,
anxiety and mental anguish all to his damage in an amount
according to proof.

45.   Furthermore, the Defendants committed the acts alleged
herein maliciously and oppressively, with the wrongful intention
of injuring Plaintiff, from an improper and evil motive
amounting to despicable conduct and in conscious disregard
of Plaintiff's rights.   Thus, Plaintiff is entitled to recover
punitive damages from Defendants in an amount according to proof.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

a.   For general damages according to proof, including damages for emotional distress, humiliation and mental anguish $250,000.00;

b.   For special damages according to proof, $500,000.00;

b.   As punitive damages, the sum of $500,000.00;

c.   The costs and disbursements of this action;

d.   All future attorney fees incurred in prosecuting this action pursuant to U.S.C. Sect. 1988; and

e.   Such other relief as the Court deems proper and just.

Robert E. Mahler                    Dated  11/17/20

Robert Evans Mahler